UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
======================================================

SHAMAIR DREHER,

                              Plaintiff,

v.                                                 5:07cv1162 NPM/GHL

SYRACUSE POLICE DEPARTMENT,
CITY OF SYRACUSE, DAVID PROUD,
KARL VONKNOBLAUCH, RICHARD
CURRAN, JEFFREY BALLAGH, and
FRED LAMBERTON,

                              Defendants.
_____

APPEARANCES

| | |
|---|---|
| Office of Charles E. Lupia<br>Attorney for Plaintiff<br>120 East Washington Street<br>Syracuse, New York    13202 | Charles E. Lupia, Esq. |
| Office of Corporation Counsel<br>Attorneys for Defendants<br>300 City Hall<br>Syracuse, New York    13202 | Rory A. McMahon, Esq.<br>Nancy Jean Larson, Esq.<br>Rosemary F. Lepiane, Esq. |

NEAL P. McCURN, Senior U.S. District Court Judge

                    MEMORANDUM - DECISION AND ORDER

      Plaintiff Shamair Dreher ("plaintiff") brings this action for monetary

damages against the Syracuse Police Department ("SPD"), City of Syracuse

("City"), Syracuse Police Officers David Proud ("Proud"), Karl VonKnoblauch

("VonKnoblach"), Richard Curran ("Curran"), Jeffrey Ballagh ("Ballagh") and Fred Lamberton ("Lamberton") (collectively, "police officer defendants"), pursuant to 42 U.S.C.A. § 1983.  Plaintiff seeks redress for alleged violations of civil rights secured to him by the United States Constitution in the form of compensatory damages in the amount of fifteen million dollars ($15,000,000.00), for alleged violations of civil rights secured to him by the New York State Constitution in the form of compensatory damages in the amount of twenty-five million dollars ($25,000,000.00),  together with attorneys' fees and costs and disbursements of this action.   Specifically, the six-count amended complaint (Doc. No. 11) alleges the following federal and supplemental state law claims: deprivation of plaintiff's civil rights pursuant to § 1983, assault, gross negligence, failure to protect, failure to provide timely medical care and intentional infliction of emotional distress.

The court has jurisdiction over this matter pursuant to 42 U.S.C.A. § 1983 and 28 U.S.C.A. §§ 1331 and 1343(a)(3).  Currently before the court is defendants' motion for summary judgment (Doc. No. 45) pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons stated below, the motion for summary judgment will be granted in its entirety.

**I.     Facts**

The following facts are drawn from the record and are construed in the light most favorable to the plaintiff.  Although the complaint is singularly lacking in detail, the court has gleaned facts from the plaintiff's deposition as well as depositions from the defendants, and from the police and hospital reports submitted with the parties' summary judgment briefing materials.  In addition, plaintiff did not furnish a statement of material facts for purposes of the summary judgment motion as he was required to do pursuant to Local Rule 7.1(a)(3)of the Local Rules of Practice for this Court, which states in pertinent part that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." See N.D.N.Y. L.R. 7.1(A)(3).  Accordingly, defendants' submitted statement of material facts is deemed true pursuant to the local rules and those facts that the court considers relevant are also incorporated herein.

On the evening of October 18, 2006, approximately between the hours of 8:00 p.m. and 9:00 p.m., plaintiff was outside Zak's Market in Syracuse, N.Y., located at the corner of West Newell Street and Wieman Avenue. Doc. No. 24-24, ¶ 6.  Zak's Market was identified by the SPD as the focal point of illegal neighborhood activity in the weeks prior to the incident resulting in plaintiff's

arrest, including loud music, loitering, disturbances, drug dealing and other nefarious activity. Doc. No. 24-13.  At approximately 8:00 P.M., plaintiff was allegedly observed by SPD officers Curran and Tackley standing outside Zak's Market with a group of black males and was issued a verbal warning by Tackley about loitering within 50 feet of the store.  Id.  Curran and Tackley, members of the Crime Reduction Team, met up with other members of the SPD, including Detective Ballagh, and relayed information about the loitering parties.  A short time later, responding to this information from Curran and his partner, Ballagh attempted to arrest plaintiff for loitering and having an open container of alcohol outside the market.  Doc. Nos. 24-5, p. 3; 24-8, p. 2.  Ballagh grabbed plaintiff by his jacket and told him he was under arrest, whereupon plaintiff successfully struggled to get out of the jacket, and attempted to flee on foot. Doc. Nos. 24-5, p. 4; 24-8, p.5.

    Plaintiff alleges that while running from the police officer, he slipped in mud and hit his face on the side of a house.  Plaintiff asserts he then caught his balance and was running down Kenmore Street when a car driven by certain SPD defendants came straight at him and hit him.  He states that the car first drove over his leg, and the last thing he remembers is the car tire going over his head. Doc. No. 24-5, pp. 4-5.  Plaintiff also testified that all of his jeans are a little loose, and

when they sometimes happen to fall down, he just picks them up. Id., p. 6.

Defendants allege that while running from Ballagh, plaintiff's pants began to fall and he was attempting to hold them up when, while looking back at Ballagh, plaintiff ran into the rear passenger side of the patrol car which was blocking his escape. After he fell, Ballagh and Curran attempted to put handcuffs on him, but plaintiff resisted. A laceration on plaintiff's head was treated at the scene by Officer Lamberton.

A hostile crowd began to form around the officers and police cars, and bottles were thrown at the vehicles. For the safety of all concerned, plaintiff was quickly transported to the police station. All officers involved testified that plaintiff was conscious and alert at all times after the arrest. When the officers attempted to pull plaintiff's pants up so he could exit the police vehicle at the police station, a loaded handgun was found in the pocket of plaintiff's pants. Accordingly, on the evening of October 18, 2006, plaintiff was charged with Criminal Possession of a Weapon in the Third Degree in violation of Penal Law § 265-02(4); Loitering, Open Container and Resisting Arrest in violation of Penal Law 205.30. Doc. Nos. 24-3, 24-24, ¶ 7 .

Plaintiff washed his forehead laceration while at the police station, and was treated again by the booking nurse. Upon alleging that he was run over by a

police car, plaintiff was transported to University Hospital, where extensive testing was performed, a left facial laceration was closed with 5 sutures, and plaintiff was diagnosed with a concussion. Doc. No. 24-4.  Plaintiff was returned to the police station early the next morning. Doc. No. 24-5, p. 17.

On July 23, 2007, plaintiff plead guilty to Criminal Possession of a Weapon in the Third Degree and to Resisting Arrest, and was adjudicated a youthful offender for the October 18, 2006 incident. Doc. No. 24-24, ¶ 8.

Plaintiff now alleges, inter alia, that on October 18, 2006, certain SPD officers maliciously assaulted him with a police car, car door and flashlight, causing him to suffer a concussion, hemorrhage to his sinus cavity, and abrasions and contusions to his forehead, back, stomach and legs. Doc. No. 11, ¶ 6.  Plaintiff also complains that defendants failed to provide timely medical care for his injuries.  Defendants, as stated above, argue that plaintiff's injuries were likely caused when he fell into the exterior of a police car that was parked in the road as he was running away from an arresting officer.  Defendants also submit a qualified immunity defense, asserting that it was objectively reasonable for the officers to believe that they did not violate any of plaintiff's constitutional rights when they were pursuing the plaintiff, who was resisting arrest. Doc. No. 24-2, p. 26.

## II. Discussion

### A. 42 U.S.C.A. § 1983 Generally

In order to prevail on a claim under 42 U.S.C.A. § 1983, a plaintiff must establish the violation of a right secured by the Constitution and laws of the United States, and that the violation was committed by a person acting under color of state law. Section 1983 states in pertinent part that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable....

42 U.S.C.A. § 1983 (West 2007).

In the case at bar, it is undisputed that the defendants were acting under the color of state law.

### B. Municipal and Municipal Employee Liability

As a preliminary matter, defendants argue that all claims against the SPD should be dismissed because a police department does not have its own legal

identity to be sued. Doc. No. 24-2, p. 14. The court notes that the SPD is a department within the City, and not a distinct separate legal entity. (Doc. No. 10-2, n.1). Although a municipality is subject to suit pursuant to 42 U.S.C. § 1983, see Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 690 (1978), a municipal police department "cannot sue or be sued because it doesn't exist separate and apart from the municipality and does not have its own legal identity." Baker v. Willett, 42 F. Supp.2d 192, 198 (N.D.N.Y. 1999). See also Leland v. Moran, 100 F. Supp.2d 140, 145 (N.D.N.Y. 2000). Consequently, the SPD has no legal capacity to sue or be sued, and plaintiff "does not contest defendants' claim that the [SPD] should be removed as a defendant." Doc. No 31, p. 5. Accordingly, the court hereby strikes the SPD as a defendant in this case.

Municipalities may be held liable under § 1983 "only when a constitutional deprivation is inflicted pursuant to a government's policy or custom. To set forth a cognizable claim for municipal liability ..., a plaintiff must plead and prove (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Rivera v. City of Yonkers, -- F.Supp.2d –, 2007 WL 143033 *5 (S.D.N.Y. 2007) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Batista v. Rodriguez, 702 F.2d 393 (2d Cir. 1983) (internal quotations and citations omitted). Although the Supreme Court in Monell determined that a

8

municipality was a "person" within the meaning of § 1983, the issue of the immunity of a municipality to punitive damages remained unresolved until the Court addressed the issue in City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). The Court unequivocally held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." Id. See also, DiSorbo v. Hoy, 343 F.3d 172, 182 (2d Cir. 2003) ("[P]unitive damages may not be awarded against a municipality under Monell").

In the case at bar, plaintiff has submitted no proof for his contention that SPD had an official policy or custom that caused the plaintiff to be subjected to a denial of a constitutional right, other than a statement alleging that "the City of Syracuse has created a policy allowing assault on citizens by repeatedly failing to properly discipline certain offending officers." Doc. No. 31, p. 7. Plaintiff also states, incorrectly , that "the Court in this action previously ruled that disciplinary action of the defendant police officers was irrelevant." Id., p. 8. In fact, on February 19, 2009, Magistrate Judge Lowe reviewed all of the defendant officers' personnel files in camera and determined that nothing in those files needed to be produced to the plaintiff. Doc. No . 24-24, ¶ 3.

In addition, despite plaintiff's assertion that "a municipality that creates a policy encouraging the abuse of citizens by certain police officers should suffer

9

the consequences in the form of punitive damages" (Doc. No. 31, p. 10), the case law is clear that punitive damages may not be awarded against a municipality. Accordingly, plaintiff's claims against the City of Syracuse are dismissed in their entirety.

### B.     Qualified Immunity

Defendants assert they are entitled to invoke the doctrine of qualified immunity for the defendant police officers, and argue they are entitled to summary judgment on these grounds.  "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled on other grounds).  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence.  Where the defendant seeks qualified immunity, a ruling on that issue should be made early in

the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. at 200. "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability," and if the case is erroneously allowed to go to trial, the privilege is lost. Id. at 200-01 (internal quotations omitted). "If the law did not put the officer on notice that his conduct would be clearly unlawful, ... [dismissal] based on qualified immunity is appropriate." Id. at 202.

"A defendant official is entitled to qualified immunity if (1) the defendant's actions did not violate clearly established law, or (2) it was objectively reasonable for the defendant to believe that his actions did not violate such law." Ford v. Moore, 237 F.3d 156, 162 (2d Cir. 2001). "An officer's actions are objectively reasonable if officers of reasonable competence could disagree on the legality of the defendant's actions." Id. (internal quotations omitted).

In light of the Second Circuit's recent decision in Parker v. Freshwater, --- F.3d ----, 2010 WL 4008747 (October 14, 2010), which found that a genuine issue of material fact remained in regard to whether a police officer's use of pepper spray was reasonable, this court has been especially diligent in reviewing the facts of this case to determine the reasonableness of the actions of officers involved.

The question in Freshwater was whether the officer's use of pepper spray was reasonable, i.e., whether it was used before or after the subject was in handcuffs. Assessing the facts in the case at bar, the court finds that the plaintiff's allegations of excessive force are unfounded based on the credible evidence presented in this case, no genuine issue of material fact remains in this case (as set forth in more detail below), and the actions of the officers in effecting plaintiff's arrest (while he was actively resisting by running away) were reasonable.

Deposition testimony by several officers that were on the scene that evening, who witnessed plaintiff's presence outside Zak's market, his attempt to flee the arresting officer, the ensuing foot chase and finally, plaintiff's apprehension by the police, gave credible testimony as to the events, said events corroborated in part by plaintiff's own deposition testimony. Assuming, arguendo, that the police car was stopped in the middle of the street to cut off plaintiff's escape route, the court deems this action to be reasonable in light of the fact that officers were in pursuit of a person resisting arrest. Accordingly, the court finds that the police officer defendants named supra are entitled to summary judgment based on the doctrine of qualified immunity. However, for the sake of judicial efficiency, the court will also evaluate the case at bar pursuant to the standard for summary judgment.

### C.     Legal Standard for Summary Judgment

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004).  "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]"  See Security Ins., 391 F.3d at 83, citing Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), citing Anderson, 477 U.S. at 250-51.

While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002),

(citing Fed. R. Civ. P. 56(c)), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003), cert. denied, 124 S.Ct. 540 (2003).

In the case at bar, the extent of plaintiff's actual injuries do not serve to make credible his assertions that a police car ran over his leg and head, that he was knocked down by a moving police car door that was opened in order to strike him down, or that he was struck repeatedly by an officer's flashlight.  Although plaintiff asserts that he has two witnesses that corroborate plaintiff's story that a SPD vehicle drove into plaintiff, and that one police officer got out of the car and struck plaintiff with the car door and a blunt object (Doc. No. 31, p. 3), no information other than the witnesses' names were given, no verification that they were on the scene of the incident was presented, and no deposition testimony from these potential trial witnesses was submitted.  Plaintiff also asserts that a video recording made after the alleged assault purports to bolster his story, citing "the voice of a white person, probably a police officer, ... stating that plaintiff was struck with a car door." Doc. No. 31, p. 4.  The court affords no credibility to this unauthenticated video recording, taken after the fact, as proof that plaintiff was assaulted.  Plaintiff further states that he has no recollection of being struck by an

object, but claims that his uncle told him that he was punched by a police officer and struck with that officer's flashlight (Doc. NO. 24-5, p. 12).

In sum, the medical report stated plaintiff's injuries as a small laceration on his face that required five sutures, and a concussion. Plaintiff testified that he slipped in mud and hit his face on the side of a house. Doc. No. 24-5, p. 4. In addition, credible testimony was given by the various officers that plaintiff either ran into the police car because he was looking back at the officer that was pursuing him during a foot chase, or because his pants fell down, tripping him and causing him to fall into the side of the vehicle. In either event, plaintiff's injuries were the result of his running from the arresting officer, and it was eventually discovered that plaintiff was in possession of a loaded weapon in violation of the law.

Defendants correctly state the standard for deliberate indifference to a serious medical need, that "in order for a pre-trial detainee to establish a claim for deliberate indifference to a medical need, a plaintiff must allege (1) a deprivation that is 'sufficiently serious,' i.e., a deprivation that presents a 'condition of urgency, one that may produce death, degeneration, or extreme pain.'" Dzwonczyk v. Syracuse City Police Dept., 710 F.Supp.2d 248, 268 (N.D.N.Y. 2008). In the instant case, plaintiff's laceration was treated at the scene, plaintiff was directed to

wash the wound at the police station, and he was treated by the booking nurse. He was transported to a medical facility where he underwent extensive testing after he alleged he was run over by a police car. After resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought, as the court is required to do, the court finds that reasonable minds could not differ as to the import of the evidence, i.e., a reasonable jury could not find that the defendants used excessive force in effecting plaintiff's arrest, nor did they neglect to provide him medical care in a timely fashion. Accordingly, summary judgment is proper in the case at bar.

For the reasons set forth <u>supra</u>, the court hereby grants defendants' motion for summary judgment on the federal claims in this action, and declines to exercise supplemental or pendent jurisdiction over plaintiff's state law claims.

### III. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is GRANTED in its entirety. The Clerk is instructed to close this case.

SO ORDERED.

December 7, 2010

*Neal P. McCurn*
Neal P. McCurn
Senior U.S. District Judge